```
                    UNITED STATES DISTRICT COURT
                   SOUTHERN DISTRICT OF NEW YORK

In re:                              :
                                         Docket #19mj4952
UNITED STATES OF AMERICA,            : 1:19-mj-04952-UA

                    Plaintiff,       :

   - against -                       :

PETER BRIGHT,                        : New York, New York
                                       May 23, 2019
                    Defendant.        :

------------------------------------ :

                       PROCEEDINGS BEFORE
                  THE HONORABLE DEBRA FREEMAN
           UNITED STATES DISTRICT COURT MAGISTRATE JUDGE

APPEARANCES:

For Plaintiff:          UNITED STATES ATTORNEY'S OFFICE
                        SOUTHERN DISTRICT OF NEW YORK
                        BY: ALEXANDER LI, ESQ.
                        One St. Andrew's Plaza
                        New York, New York  10007


For Defendant:          FEDERAL DEFENDERS OF NEW YORK
                        BY:  AMY GALLICCHIO, ESQ.
                        52 Duane Street
                        New York, New York  10007
```

```
Transcription Service:  Carole Ludwig, *Transcription Services*
                        141 East Third Street #3E
                        New York, New York 10009
                        Phone:  (212) 420-0771
                        Fax:  (212) 420-6007
```

```
Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.
```

## INDEX

### E X A M I N A T I O N S

| Witness | Direct | Cross | Re-Direct | Re-Cross |
|---|---|---|---|---|
| None | | | | |

### E X H I B I T S

| Exhibit Number | Description | ID | In | Voir Dire |
|---|---|---|---|---|
| None | | | | |

3

THE CLERK:  United States versus Peter Bright.
Counsel, please state your name for the record.

MR. ALEXANDER LI:  Good evening, Your Honor,
Alexander Li for the government, I'm joined here by
Special Agent Elizabeth Jensen from the FBI.

THE COURT:  Good evening.

MS. AMY GALLICCHIO:  Good evening, Your Honor,
The Federal Defenders by Amy Gallicchio for Peter
Bright who's present.

THE COURT:  All right, may I have a date and
time of arrest, please?

MR. LI:  Your Honor, the defendant was
arrested yesterday, May 22, 2019, at approximately
2:55 p.m.

THE COURT:  Sorry it's taken this long to get
this matter to court, Mr. Bright.

MS. GALLICCHIO:  Thank you.

THE COURT:  We had a lot of matters today and
we just got rather backed up but you shouldn't have
had to wait that long. Defendant is a US citizen or a
citizen of the United Kingdom?

MS. GALLICCHIO:  Dual citizenship, Your Honor,
I understand.

THE COURT:  All right.  All right, the purpose

4

of this proceeding this evening, Mr. Bright, is first
to inform you of certain rights that you have; second,
to inform you of the charges against you; third, to
decide whether counsel should be appointed for you;
and finally, to decide the conditions, if any, under
which you'll be released.  With respect to your
rights, you have the right to remain silent, you are
not required to make any statements. Even if you're
already made statements to the authorities, you need
not make any further statements. Anything you do say
can be used against you.

You have the right to be released, either or
without conditions pending your trial, unless I find
that there are no conditions that would reasonably
assure both your presence in court and the safety of
the community.

You have the right to be represented by
counsel during all court proceedings, including this
one, and also during any questioning by the
authorities.  If you cannot afford an attorney, I will
appoint one to represent you. I do have a financial
affidavit here that's been handed up in connection
with the request for appointment of counsel.  Just
with respect to this financial affidavit, I'm going to

                                                              5

1

2  ask you, please, to stand and raise your right hand so

3  I can swear you to the statements in the affidavit.

4  Do you swear the statements in this financial

5  affidavit are true and correct, so help you God, and

6  this is your signature at the bottom?

7          THE DEFENDANT: It is, I do.

8          THE COURT:  All right, have a seat.  I'm

9  approving the request for appointment of counsel, I'm

10 appointing Ms. Gallicchio to represent you.  I see

11 that there is a spouse here who has a fairly

12 significant income, but I'm basing it on defendant's

13 income, unless the income with the spouse is somehow

14 joint.

15         MS. GALLICCHIO:  No, they have separate, I

16 mean they're married, obviously, but they share

17 household expenses, that would be the only

18 commonality.

19         THE COURT:  At some point someone should

20 explain to me why we ask this question.

21         MS. GALLICCHIO:  I know.

22         THE COURT:  I mean if it's, I'm actually

23 wondering out loud if it's reported as joint income,

24 is part of this available to defendant, I don't know

25 how that works.

```
 1                                                    6

 2              MS. GALLICCHIO:  Right.

 3              THE COURT:  Maybe you can check into that and

 4  get back to me if there is any issue there that I

 5  should be aware of.

 6              MS. GALLICCHIO:  Okay.

 7              THE COURT:  Thank you, appreciate that.

 8              MS. GALLICCHIO:  Sure.

 9              THE COURT:  Where was I, the complaint.

10  Elizabeth Jensen, if you could stand and raise your

11  right hand.  Do you swear the statements contained in

12  this complaint are true and correct, so help you God,

13  and that's your signature at the back?

14              SPECIAL AGENT EXLIZABETH JENSEN:  I do.

15              THE COURT:  So you have been charged, Mr.

16  Bright, in a complaint with one count of violating

17  title 18 of the United States Code, Section 2422(B) and

18  2.  The crime is described as attempted enticement of a

19  minor to engage in illegal sexual activity.  The crime

20  charged carries with it a number of possible sanctions,

21  including possible jail time.

22              Counsel, have you received a copy of the

23  complaint?

24              MS. GALLICCHIO:  Yes, I have, Your Honor.

25              THE COURT:  Have you had a chance to read and
```

7

1
2  review it with your client?

3          MS. GALLICCHIO:  Yes, Your Honor.

4          THE COURT:  Do you waive its public reading?

5          MS. GALLICCHIO:  Yes, I do.

6          THE COURT:  All right, Mr. Bright, because

7  you've been charged in a complaint you also have the

8  right to a preliminary hearing at which the government

9  would have the burden of establishing that there is

10 probable cause to believe that this crime was committed

11 and that you are the person who committed the crime. If

12 probable cause is not established you'd be released from

13 this charge. If it is established, the government would

14 then have the right to proceed to trial against you.

15         If, after this proceeding today, you're being

16 held in custody, you would have the right to have that

17 preliminary hearing held within two weeks, fourteen days,

18 otherwise, if you're not in custody it need only be held

19 within three weeks or twenty-one days. You should also

20 understand though that there won't be any preliminary

21 hearing at all if at some point between and the date when

22 the hearing is scheduled, you are either indicted by a

23 grand jury, or what's called a criminal information is

24 filed against you by the government.

25         What is the government's position here with

```
 1                                                    8

 2   respect to bail?

 3              MR. LI:  The government requests detention,

 4   Your Honor.

 5              THE COURT:  Is there going to be an argument?

 6              MS. GALLICCHIO:  Yes, Your Honor.

 7              THE COURT:  Okay.  All right, well let me hear

 8   first from the government as to why you believe

 9   detention is appropriate here.

10              MR. LI:  Your Honor, let me just first say

11   that this is a presumption case due to the nature of

12   the offense.

13              THE COURT:  Right.

14              MR. LI:  I think this is a case that calls out

15   for detention that really shows that the presumption

16   is warranted, both for the risk of flight and for the

17   danger to the community. On the risk of flight, Your

18   Honor, just in the interest of time I'll just refer

19   you to the Pretrial Report, the defendant is a dual

20   citizen, he has affiliations with the United Kingdom,

21   and I'll leave it at that. It's really the

22   dangerousness to the community that gives the

23   government the greatest pause.

24              As Your Honor can see from the complaint,

25   during the course of the text messages, the defendant
```

9

stated that the was currently engaged in "training" an
11 year old girl from the Bronx.  I understand he has
since recanted that statement, he said it's not true,
but we don't know whether that's true and we take him
at his word, or at least we take him at his word that
it's a possibility that that may, in fact, be going
on.

In addition, Your Honor, after he was arrested
the defendant gave post arrest statements, including
that he, excuse me, Your Honor, including that the
defendant is currently engaged in text communications
with a 17 year old girl and a 14 year old girl.  With
respect to the 17 year old girl, the defendant stated
that he, that she had sent him a nude photograph, that he
had deleted it, and that he had planned to meet with her and
potentially --

THE COURT:  I'm sorry, this was from, this was
post arrest statements?

MR. LI:  Post arrest statements, Your Honor. And
I mention this not for the purpose of any kind of
propensity, but only to establish that there is a risk
to the community if, in fact, he is released.

With respect to the 14 year old girl, the
defendant stated that she also might have sent him a

10

nude photograph, and that this 14 year old girl was

the sister of the 17 year old girl.  Your Honor, I

don't know what plans the defendant may or may not

have with respect to the three potential victims that

are out there, but there are three potential victims

out there and we don't know if there are any more and

who they might be.

I think because of the nature of this offense,

this is an online child enticement case, or attempted

child enticement case, any access to the facilities of

online resources to reach out potentially to these

individuals, to potentially have them come to his

home, or for him to go to their homes, even in the

context of home detention they could come to him, we

simply don't see any way to mitigate that risk of

danger to the community, Your Honor. And for those

reasons we would ask for detention.

MS. GALLICCHIO:  Your Honor, I mean I, he

lives with his wife in an apartment and I do think

that home detention, home confinement, home

incarceration is a viable option here, is a legitimate

option here. And I think that obviously no one can

predict anyone's conduct, and so it's hard for me to

even answer that concern. But I think that certainly

1

2 | being on home confinement can address that concern.

3 | Certainly other restrictions that the Court

4 | can impose, and I would agree to essentially all of

5 | the conditions that Pretrial Services has suggested,

6 | which would restrict --

7 | THE COURT:  If he were to be released there

8 | are whole bunch of mandatory conditions.

9 | MS. GALLICCHIO:  Oh, yes, of course, as a

10 | result of the nature of this offense.

11 | THE COURT:  The Adam Walsh Act requires very

12 | restrictive conditions.

13 | MS. GALLICCHIO:  Yes, for that very reason, to

14 | address the concerns that the government raises and

15 | that the Court may have.  So there are conditions,

16 | there is a contemplation that people with these sorts

17 | of charges would be released, therefore these are the

18 | conditions that should be in place.

19 | Mr. Bright has no criminal record, he's 38

20 | years old, I'm sure the government has conducted an

21 | investigation of his electronic devices or begun that

22 | investigation. It doesn't appear that there is a

23 | history of the behavior that's charged here. And, Your

24 | Honor, he, like I said, the conditions that are

25 | suggested here are certainly sufficient to address the

12

concerns.

Risk of flight, I'm not sure if the Court
wishes me to address that.  Yes, he does have dual
citizenship, however, his wife is a US citizen, she's
born here in the United States and obviously they live
together. His passports I think have been confiscated by
the government and, therefore, it would impossible for him
to leave the United States.

THE COURT:  There are no children?

MS. GALLICCHIO:  They don't have children, no.
Her entire family here is in the United States and
obviously they are married.

THE COURT:  Is defendant working?

MS. GALLICCHIO:  He is working, Your Honor, and
he actually works from home.

THE COURT:  Does he work from home with a
computer?

MS. GALLICCHIO:  He does.

THE COURT:  Does he work from home on the
internet?

MS. GALLICCHIO:  Yes. I mean he --

THE COURT:  He wouldn't be able to do that
with the mandatory conditions.

MS. GALLICCHIO:  I think one of the conditions

13

was, well, with respect to like condition thirteen,

defendant may possess his desktop computer for

employment purposes, but must submit his computer for

monitoring. As a matter of fact, I believe the

government has confiscated his desktop computer, but

were he to work from home, he would have to  he would

need a computer because of the nature of his work.

And certainly would be willing to or would comply with

the condition that it be subject to monitoring by

Pretrial Services.

I mean short of that, he would have to resign

his job, which --

THE COURT:  Yes, I'm looking at the proposed

conditions twelve and thirteen, they both say no

internet enabled device or computer apart from one

computer for employment purposes must be submitted for

monitoring.

MS. GALLICCHIO:  Um-hmm. Really the only

reason he would need to leave his home is that he and

his wife do go to counseling. He does have, as you can

see, there is a mental health component here, he does

suffer from depression and ADHD. He is on medication,

he does attend therapy. He and his wife also attend

couples therapy.  I think it would be in his interest

14

to continue that therapy.  And so, you know, with the

permission of the Court and Pretrial Services, would

be something we would like him to be able to continue

attending.  But short of that, there really is very --

THE COURT:  So I'm not concerned about the

facts actually underlying this complaint because this

was undercover, but I am concerned the government says

based on statements that defendant was making in his

communications with the undercover and after arrest, I

am concerned there are other minors out there with

whom he's had actual contact and whom he actually

already knows. That is a reason for concern because we

would not want the possibility of that continuing with

those individuals or anyone else.

You say he's home with his wife and so,

therefor, there is no possibility of anyone coming

into his home, is his wife there 24/7?

MS. GALLICCHIO:  No.  No, she's not there

24/7.

THE COURT:  So how can I be assured that what

the government says could happen here will not, or that

the conditions, you know, would be sufficient to obviate

those concerns that minors with whom he has already had

contact --

15

MS. GALLICCHIO:  Well, with respect to, I think we're talking about there's three of them in text conversation on this site, there was a discussion of an eleven year old. That is the statement that --

THE COURT:  That's the first statement and then the government proffers that after arrest defendant made statements that referred to two others.

MS. GALLICCHIO:  Right.  But with respect to that person, that was in the text conversations which he denies that being an actual fact.

THE COURT:  I understand that. I understand that, but he, in the recorded statement, even if he is now denying it, he does indicate that he has been seeing this girl on and off for a couple of months. So he does say she's in the Bronx, but that doesn't necessarily, I don't know where he was living. Yes, I do know, because I have the address which was where, in Brooklyn.

MS. GALLICCHIO:  Well, other than I can tell you that he's denying that, I don't know what else to tell the Court with respect to that. But I think that if his computer is monitored, then there is no ability for him to have communication with anyone --

THE COURT:  Well that's not really true, because if he has already managed to hook up with

16

1

2  somebody and has that person's phone, or text, or

3  something, he doesn't need a computer to be in touch

4  with that person.  He doesn't need a computer to find

5  a new person if he's already in contact with people

6  and says, you know, here's my number and so on. I

7  just, I don't know, it just gives me pause.

8      MS. GALLICCHIO:  Well, Your Honor, he would

9  certainly be willing to give up a phone if that was a

10 requirement of release, an ability to community by

11 phone.

12     THE COURT:  Well I can't take all phones out

13 of a household, it's a safety issue.  I mean somebody

14 has to be --

15     MS. GALLICCHIO:  Well I think his wife has a

16 cell phone, I don't believe they have a landline, they

17 don't have a landline. So she has a cell phone.

18     THE COURT:  Are you his wife?

19     MS. GALLICCHIO:  That's his wife, she's in

20 court, yes.  So his ability to use a phone can be

21 restricted.  I mean obviously we can't monitor someone

22 24/7, we can't put a camera in their home, I get that,

23 but that should not, that's an impossibility.  And

24 that's the case with anyone who is released on bail,

25 people who are accused of conducting drug

1                                                        17

2   organizations and use phones for that business, they

3   --

4            THE COURT:  Sure, but if we, look, if we have

5   information that somebody's been doing drug dealing

6   out of their home, they're not going to go back to

7   electronic monitoring in their home.  That doesn't

8   make any sense to try to ameliorate the issue.  I

9   don't know here what has happened, if anything, I

10  don't know where, I don't know precisely with whom, I

11  don't know through what sort of communication, you

12  know, it's a, the unknown is, itself, concerning

13  because you have to worry about the community which

14  certainly includes minor children in the community and

15  the obligation is to make sure that that issue of

16  danger is addressed. And I am, you know, if I had more

17  specific information I could say, oh, this is not an

18  issue because, but I don't know, I'm guessing as to

19  the child would never come to the home, that he

20  doesn't have a phone number, that he doesn't have

21  other ways of contacting them, that that's all fine, I

22  just don't know that.  I'm concerned that he's

23  identified at different points in time others besides

24  the presumably fictitious children in the undercover

25  operation.

18

MS. GALLICCHIO:  Right.  Well, I mean he would now be under Court restriction and Court supervision, so I think it would be incredibly risky and foolish and he would know that for him, he's going to be monitored, he's going to be -- he would be if the Court were to release him by Pretrial Services. Certainly he's under the microscope at this point.  So I, other than having someone stand watch outside of his home which certainly can't be done, there isn't an answer that I can give to the Court, other than the fact that the circumstances are different now in that he is now being accused of a crime and it certainly would be incredibly risky for him to jeopardize any liberty the Court might grant him.

And I suspect that the government will continue investigating, will get search warrants for his devices and will continue investigating and will make determinations about whether there actually are other risks, were other contacts, and could certainly notify the Court if that happens and can make an application to change his bail conditions based on their investigation.

THE COURT:  Anything further from the government?

```
 1                                                    19
 2            MR. LI:  Your Honor, just listening to this
 3    discussion, I'm sort of struck because the very
 4    difficulty that I think counsel has honestly
 5    acknowledged, that monitoring the defendant and the
 6    impossibility, frankly, of putting somebody there to
 7    monitor him constantly or putting a camera there to
 8    monitor him constantly is exactly the standard for
 9    which detention would be required. If there is no
10    condition or combination of conditions, that can
11    reasonably assure the safety of the community, then
12    that is the reason for remand. And I think, Your
13    Honor, that standard is met here.
14            MS. GALLICCHIO:  I just --
15            THE COURT:  Go ahead.
16            MS. GALLICCHIO:  I just, it would be almost
17    impossible in any case though --
18            THE COURT:  I know, I understand.
19            MS. GALLICCHIO:  So what's reasonable, what
20    can we reasonably do? And I do --
21            THE COURT:  I understand that, the factor that
22    is troubling me here is the statement which he is now
23    saying was not true, maybe it was some sort of puffery
24    and it wasn't really true --
25            MS. GALLICCHIO:  Right.
```

1                                                           20

2          THE COURT:  About an 11 year old girl, but

3    then after arrest and presumably he's being arrested,

4    and he knows he's in trouble, and he's still telling

5    law enforcement that there are I gather two other

6    girls with whom he's had contact, am I understanding

7    correctly?

8          MR. LI:  Yes, Your Honor. I don't know whether

9    he had contact with them, Your Honor, but he stated

10   that he was having text communications with these two

11   girls, a 17 year old and a 14 year old. I don't know

12   whether any contact was ever made, Your Honor.

13         THE COURT:  I'm having trouble with this. I'm

14   having trouble with finding that the presumption of

15   danger is overcome by these conditions, but I'm going

16   to order detention.  If the evidence starts being

17   developed and you really think that the picture that's

18   being painted is such that the concerns that I have

19   would be allayed, come back and ask again. It's

20   without prejudice and would be without prejudice

21   anyway, you can always make another application. But I

22   think some better information is needed before I can

23   find this presumption overcome.  I feel like there's

24   information out there that we don't have and I --

25         MS. GALLICCHIO:  Oh, there is, apparently

21

there is video surveillance in the building that the
government certainly could get access to, to monitor
whether anyone comes in the building, if that's
something that the Court would require.

THE COURT:  That's an interesting fact.  What
if we had home incarceration and can we find out if
whatever this surveillance is is video recorded or only
live time monitoring and how long it is preserved and
whether, in fact, you know, if the government has concern
it would be available to them to go back and check over a
period of time?  I mean, you know, it's an interesting
fact but a lot of cameras --

MS. GALLICCHIO:  Right, I know, I know, don't
record.

THE COURT:  You know, may not be recording or
may record over itself.

MS. GALLICCHIO:  I mean the other thing that I
know that he has suggested to me that they could install a
video surveillance outside the door of their apartment
building that would record, I think they would be,
certainly he would be willing to do that and preserve that
footage and turn it over on a regular basis. it's
certainly an option. That would be the one way to actually
monitor who comes in and out of that apartment.

22

THE COURT:  It's a thought.  It's creative.

MR. LI:  Your Honor, I mean I think it would be Pretrial that ultimately would have to bear the burden of this, which sounds like pretty constant monitoring and I'm not sure that's something, frankly, that Pretrial has the resources to do.  I'd also be concerned, I don't know if this apartment is shared by any other residents or not, but if it's an apartment complex, I would be concerned that other residents of the complex may not be so happy about new cameras being installed in their building.

MS. GALLICCHIO:  I'm just saying his door, one that's above his door that he could, obviously it would have to be attached to some point inside the apartment, maintain the footage of, and turn it over on a regular basis to Pretrial.

THE COURT:  Thoughts?

MS. GALLICCHIO:  Right, I wouldn't want to intrude on the privacy of others.

THE COURT:  You've never heard of such a thing?

PRETRIAL SERVICES AGENT:  If I'm being totally honest, I would want to speak to a supervisor in the office about this. We've never had this situation, I'm

23

not going to say no, I'm not going to say yes, I think
it's something we'd have to discuss.

THE COURT:  All right, I think it's worth
discussing. I'm going to order detention at this time.
The reality is that I wouldn't order release without a
whole bunch of conditions in place in any event, and
Pretrial visiting the home and being assured that it
was appropriate and things are doable.  So he would
not be getting out right now regardless of whether I
set conditions. But you can confer with pretrial. If I
were to set conditions, apart from all of the
mandatory Adam Walsh Act conditions, I would set a
condition of home incarceration, but with mental
health evaluation and treatment as deemed appropriate
by Pretrial Services.  So there may be an exception to
the home incarceration for medical care which could
include mental health care.

PRETRIAL SERVICES AGENT:  Yes, as long as you
order it, Your Honor.

THE COURT:  Right. So I would consider that.
And with some kind of, if there was some sort of
voluntary surveillance, it would have to be installed
in some way that it would not interfere with neighbors
and would have to be, you know, clearly trained on the

24

access point or points to the apartment, I don't know

if there is only one door.  You know, I'm not

listening to Mr. Bright, you speak through counsel for

me, but confer with Pretrial and if you have a bright

idea as to how we can have assurance that he's not

going out and that no minors are coming in to this

apartment --

          MS. GALLICCHIO:  I mean Pretrial would know if

he's going out because they have the electronic

monitor.

          THE COURT:  Right, but that nobody is coming

in, okay?

          MS. GALLICCHIO:  Right.

          THE COURT:  I would consider that. I mean my

calendar is crazy, but you can come back to me maybe

even with a written application if you have something

that's concrete in this regard and that Pretrial is

willing to do and it seems to work.

          MS. GALLICCHIO:  Okay.

          THE COURT:  All right, if you come back to me,

make it something that has all of the mandatory

conditions and so on. If I agree, I can so order it

without thinking, wait, what else do I need to put in

here.  The level of, I would increase the level from

25

home detention to home incarceration. I would enforce

it with a GPS monitoring instead of just your regular

electronic monitoring. I think the rest of the

conditions that are in the Pretrial Services Report

are probably all of the conditions. I'm always very

reluctant to say no contact with victims or witnesses

without knowing who we're talking about so that it's

clear to a defendant who he can and who he can't see,

but I would say no contact with minors.

          MS. GALLICCHIO:  Right.

          THE COURT:  And are there any family members

who are minors, you know, nieces, nephews, anything of

that nature?

          MS. GALLICCHIO:  Maybe in the United Kingdom

but not here.  None that he couldn't avoid.

          THE COURT:  Obviously there would be surrender

of passports, plural, if there are two passports, no

new applications. A bond, cosigners, all the rest of

that, okay?

          MS. GALLICCHIO:  Yes.

          THE COURT:  All right, so you talk about that,

I'm ordering detention right now but I'm open to home

incarceration.  So let me just ask, since his wife is

here, you're here, I gather you're being supportive,

                                                                    26

1

2    you want him back in the home with you?  You're

3    willing to try to make sure he doesn't go anywhere, he

4    shows up in court when he's supposed to, he stays out

5    of trouble, et cetera, et cetera?  All right.  Well,

6    Mr. Bright, you are fortunate to have your wife

7    standing by you here.

8              MS. GALLICCHIO:  Your Honor, he does receive

9    medication, Wellbutrin, I believe, and Adderall.

10             THE COURT:  All right, well let me --

11             MS. GALLICCHIO:  The marshals have it.

12   Excellent.

13             THE COURT:  All right, hold on.  This is 4952,

14   4992, what's the case number, 4952.  That does not

15   look like a 5, I'm going to redo the 5.  Do you have

16   specifically what the medications are?  Do you have a

17   diagnosis or is it just --

18             MS. GALLICCHIO:  Depression.  It's Wellbutrin,

19   W-E-L-L-B-U-T-R-I-N.

20             THE COURT:  Right, do you have the dose?

21             MS. GALLICCHIO:  It's 300 milligrams, 1 tablet

22   daily in the morning.

23             THE COURT:  Okay.

24             MS. GALLICCHIO:  That's it.

25             THE COURT:  Is that the only one?

27

MS. GALLICCHIO:  That's it.  He had been taking, he doesn't have it with him, a medication for ADD. I would also ask that the Court order that he be seen by the mental health department at the prison.

THE COURT:  Okay.  Preliminary hearing date?

MS. GALLICCHIO:  I'm going to ask for a two week date, Your Honor.

THE COURT:  June 6th. All right, so no for now but I'll consider it.

MS. GALLICCHIO:  Thank you.

THE COURT:  If you got me something that works.

(Whereupon the matter is adjourned to June 6, 2019.)

28

C E R T I F I C A T E

        I, Carole Ludwig, certify that the foregoing
transcript of proceedings in the United States District
Court, Southern District of New York, United States of
America versus Peter Bright, Docket No. 19mj4952 was
prepared using digital electronic transcription equipment
and is a true and accurate record of the proceedings.

*Carole Ludwig*

Signature_____

                Carole Ludwig

Date:  June 18, 2019